```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


                              )
UNITED STATES                 )
                              )
          v.                  )    CRIMINAL 03-10329-PBS
                              )
JACKSON NASCIMENTO,           )
 KAMAL LATTIMORE, and         )
 LANCE TALBERT,               )
                              )
          Defendants.         )
                              )
```

**MEMORANDUM AND ORDER**

December 2, 2005

Saris, U.S.D.J.

Pursuant to Fed. R. Crim. P. 29(c) and 33(a), defendants Jackson Nascimento, Lance Talbert and Kamal Lattimore move for a judgment of acquittal, or in the alternative for a new trial. After hearing, the motions are **DENIED**. I address the major new issues below.

1. Duration of Enterprise

Defendants argue that the government failed to present sufficient evidence that the Stonehurst enterprise existed for substantially the entire period alleged in the indictment, that is from July 1996 until September 2004. Under Fed. R. Crim. P. 29(c), in assessing a motion for judgment of acquittal, "a court must determine 'whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the

essential elements of the crime.'" United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002) (quoting United States v. O'Brien, 14 F.3d 703, 706 (1st Cir 1994)).  So long as the guilty verdict "finds support in 'a plausible rendition of the record,' it must stand."  Moran, 312 F.3d at 487 (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)).

The indictment alleges "[f]rom a time unknown, but at least by July 1996, until the date of this Indictment," the defendants "associated with the Enterprise," and that the enterprise existed at "all times relevant to this Indictment."  The jury instructions stated that the government had to prove "that an enterprise existed as alleged in the indictment," and that it "continue[d] in an essentially unchanged form during substantially the entire period alleged in the indictment." Defendant asserts that the government only presented evidence that Stonehurst existed between 1998 and 2000.  No objection was made to the instructions, and none of the defendants made this argument in closing arguments or at any time before or during the trial.  The government contends that defendants are playing the unfair game of "gotcha" on an issue that played no role at trial.

While it is true that most of the evidence at trial involved gang shootings between 1998 and 2000, the testimony of Marcelino Rodrigues would support a fact-finding that the Stonehurst enterprise existed between 1997 and 2001.  There was also evidence that the gang warfare between "Stonehurst" and

2

"Wendover" was precipitated by the stabbing of Bobby Mendes in 1995, and that Augusto Lopes joined an already existent Stonehurst gang after he got out of jail in late 1997 or 1998. (Trial Tr. 10:63-71, 75, Feb. 11, 2005.) The government fails to point to any evidence that would support an enterprise from 2002 to 2004. The question is whether the insufficiency of the evidence supporting an enterprise for the entire span of time alleged in the indictment is fatal. I conclude it is not.

Defendant primarily relies on United States v. Morales, 185 F. 3d 74, 81 (2d Cir. 1999), which held that there was insufficient evidence to establish that an enterprise lasted from 1987 to 1996, as alleged in the indictment, when it effectively disbanded in 1988 and then resumed in 1995. Because an enterprise must be an "ongoing" organization which functions as a "continuing" unit under the continuity prong articulated in United States v. Turkette, 452 U.S. 576, 583 (1981), the Second Circuit held that the seven-year hiatus during which the defendants in Morales were incarcerated established two separate enterprises, rather than one ongoing one as charged. Of significance to this case, the Court then declined to consider whether the evidence was sufficient to support a finding of a shorter racketeering enterprise because the indictment charged a nine-year enterprise which functioned as a continuing unit, not two one-year conspiracies.

Here, in contrast, there was evidence of one ongoing

Stonehurst enterprise, substantially as described in the indictment, but for a shorter period of time than alleged in the indictment.  When the facts proved at trial are different from those alleged in the indictment, the variance is grounds for reversal only if it is prejudicial to the defendant's "substantial rights."  United States v. Fisher, 3 F.3d 456, 463 (1st Cir. 1993).  It is true that the court instructed that the enterprise had to continue in an essentially unchanged form during "substantially the entire period alleged in the indictment."  However, as the government pointed out, the duration of the enterprise is not an element of the charge so long as the enterprise is ongoing and is not a different enterprise than the one charged.

In the analogous conspiracy case law, courts have consistently held that a conspiracy that exists for a shorter period of time than the one alleged does not require a judgment of acquittal as a factual variance.  See, e.g., United States v. Doherty, 867 F.2d 47, 64-65 (1st Cir. 1989) (upholding conspiracy conviction even if government proved participation only in a "simpler, stripped down version of the general conspiracy" because no legal prejudice arose); United States v. Bowers, 739 F.2d 1050, 1053 (6th Cir. 1989) (rejecting argument that evidence of a conspiracy of shorter duration than that charged in indictment caused unfair surprise requiring reversal); United

States v. Hathaway, 534 F.2d 386, 401 n.19 (1st Cir. 1976). That precedent is persuasive here because there is no showing of unfair prejudice or surprise.

2.  Interstate Commerce

Defendants' challenge to the sufficiency of the evidence regarding the interstate commerce nexus is the most serious issue in the case.  Both RICO and VICAR require the government to prove that enterprises "engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. §§ 1959(b), 1962(c) (2005).  The government must prove a de minimis interstate commerce connection.  See United States v. Marino, 277 F.3d 11, 35 (1st Cir. 2002).  The Court discussed the case law in an earlier decision and does not repeat the analysis here.  See Memorandum and Order, Jan. 19, 2005 (Docket No. 598).  While there was evidence that individual members of Stonehurst sold drugs out of stash houses that other members frequented, defendants argue that there was insufficient evidence to prove beyond a reasonable doubt that the Stonehurst enterprise engaged in drug dealing as charged in the indictment.  I agree.

Therefore, one of the government's pillars supporting an interstate commerce nexus collapsed at trial.  However, the other pillars remain.  The Stonehurst enterprise did engage in shootings and murders using at least eight handguns that traveled in interstate commerce, and there was evidence that the members

of the enterprise purchased and retained these guns as a shared resource for one another's use to commit the enterprise's violent activities. (Trial Tr. 10:85, Feb. 11, 2005.) One of the murders involving Louis Carvalho resulted in the shutdown one night of a tire shop that engaged in 24-hour interstate commerce. There were also shootings involving rival gang members in broad daylight on busy streets, for example, near a pizza parlor in Boston. Talbert's shooting of Adiello DaRosa was one daytime shooting on the urban corner of Bowdoin and Draper Streets at 3:40 p.m. (Trial Tr. 7:138, Feb. 8, 2005.) The murder of "Big Blue" Dinho Fernandes happened in the afternoon on a street corner in Brockton. The shooting of David Andrade occurred in a business district outside the Dublin House. There was also a shooting by a member of the Stonehurst enterprise against a Wendover member in Rhode Island in 1998. (Trial Tr. 10:131-33, Feb. 11, 2005.) Accordingly, I conclude that there was sufficient evidence to support a jury finding that the shooting grudge match in public business areas at all times of day and night with guns that were purchased in interstate commerce had at least a de minimis impact on interstate commerce.

    3. <u>Double Jeopardy</u>

    Talbert argues that Racketeering Act One – Conspiracy to Murder in violation of 18 U.S.C. § 1962(c) and Count Three which charges Conspiracy to murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5) are duplicative, and conviction on both

violates the Double Jeopardy Clause.  Similarly, he contends that his conviction on Count One of the indictment charging a racketeering enterprise, as drafted, and Count Two, the racketeering conspiracy, violates double jeopardy.

"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not." United States v. Fornia-Castillo, 408 F. 3d 52, 69 (1st Cir. 2005) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)).

The First Circuit rejected virtually the same argument in Marino, 277 F.3d at 39, stating unequivocally that the general prohibition against multiple punishments for the same acts does not bar separate punishment for a substantive RICO violation, a RICO conspiracy, and a VICAR violation which is also charged as one of the RICO predicate acts.  Id. ("We join the circuits that have held that a substantive RICO violation and a RICO conspiracy are not the same offense for double jeopardy purposes, and accordingly, can be punished separately." (citations omitted)). Talbert relies on Restrepo v. United States, 761 F. Supp. 211 (D. Mass. 1991).  However, that case involved different statutes, 21 U.S.C. §§ 846, 848, whereas the First Circuit has ruled explicitly with respect to the double jeopardy implications of the RICO statute, RICO conspiracies, and VICAR violations.

Marino, 277 F.3d at 39 (citing United States v. Greenleaf, 692 F.2d 182, 189 (1st Cir. 1982)).

    4.  Miscellaneous

The Court rejects the other arguments for the reasons stated in the government's brief and the Court's earlier memorandum.

                                        **S/PATTI B. SARIS**
                                        United States District Judge