```
                     UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
_____
                              )
UNITED STATES OF AMERICA      )
                              )
     v.                       )   CRIMINAL ACTION NO. 03-10329-PBS
                              )
JACKSON NASCIMENTO,           )
                              )
     Defendant.               )
_____)
```

**MEMORANDUM AND ORDER**

May 26, 2009

Saris, U.S.D.J.

## I. INTRODUCTION

Defendant Jackson Nascimento was convicted of racketeering and firearm charges and sentenced to 171 months imprisonment. Nascimento has filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255, arguing that his trial counsel provided ineffective assistance by failing to convey a plea offer and that he has newly discovered evidence which undermines his conviction.[1] After an evidentiary hearing, the motion to vacate on the first ground is **DENIED**.

## II. BACKGROUND

In September 2004, a federal grand jury issued a superseding indictment against thirteen defendants, including Nascimento, for participating in the Stonehurst Street gang's war with a rival

---

[1] Nascimento has dropped claims 1, 3 and 4 of the motion.

gang called "Wendover."  In March 2005, following a jury trial, Nascimento was convicted of various racketeering charges and one charge of using a firearm in furtherance of a crime under 18 U.S.C. § 924(c).  Specifically, he was found guilty of shooting an innocent person, Zilla DoCanto, in furtherance of the gang's vendetta against Wendover.  He was found not guilty of a second 924(c) charge involving Danny Antunes.  This Court sentenced Nascimento to 171 months in prison, the second longest sentence given to any of the defendants in the case.  The First Circuit denied his appeal on July 2, 2007, and the Supreme Court denied his petition for certiorari.  United States v. Nascimento, 491 F.3d 25 (1st Cir. 2007), cert. denied, 128 S. Ct. 1738 (2008).

In June 2008, Nascimento filed a motion to vacate his sentence under 28 U.S.C. § 2255.  On Decemer 12, 2008, he narrowed the motion to two claims: (1) a claim of ineffective assistance of counsel and (2) a claim that a new report on ballistics undermined his conviction.  As for the first claim, Nascimento asserts that his attorney provided ineffective assistance by failing to convey a plea offer that would have dropped the 924(c) charge involving Antunes.  A single 924(c) conviction carries a mandatory sentence of ten years, consecutive to any other sentence; a second conviction carries a mandatory twenty-five year sentence, consecutive to any other sentence.  18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(1)(C)(I), 924(c)(1)(D)(ii).

Had Nascimento been convicted of both 924(c) charges, he would have faced a mandatory sentence of thirty-five years.  Nascimento claims that accepting the plea offer would have reduced his sentence because he would have received credit for acceptance of responsibility, resulting in a sentence of 144-161 months under the sentencing guidelines, 27 months less than he received.

On January 7, 2009, this Court held an evidentiary hearing to consider the motion.  The Defendant presented three witness: his lead trial attorney, John Salsberg, his associate trial attorney, Ryan Schiff, and the Defendant himself.  The government was represented by one of the Assistant United States Attorneys ("AUSAs") who had originally prosecuted Nascimento.

All three witnesses offered varying, sometimes contradictory testimony as to the discussions concerning the plea deal.  Salsberg testified that he initiated an exploratory conversation with the AUSA to see what the possibilities were for a plea deal.  (Hr'g Tr. 17, Jan. 7, 2009.)  In the conversation, which lasted about "five to ten" minutes, Salsberg discussed a possible plea deal to drop the 924(c) charge involving Antunes in exchange for pleading guilty to all the remaining charges.  (Id. at 20, 30-31.)  According to Salsberg's calculations, such a plea deal would have cut Nascimento's sentencing exposure almost in half, from more than thirty-five years to roughly fifteen to twenty years, with a ten-year mandatory minimum.  (Id. at 33-34.)

Salsberg believed that the government would accept no other plea deal.  (Id. at 16.)  In his view, if Nascimento accepted this offer, it "would happen."  (Id. at 20.)  Salsberg reviewed the substance of this conversation with Nascimento as part of a general discussion of the sentencing guidelines for various convictions.  (Id. at 31-35.)  According to Salsberg, Nascimento was not interested in the deal.  (Id. at 34-35.)  Other than this conversation, Salsberg could not recall Nascimento asking about the possibility of a plea deal.  (Id. at 24.)

Salsberg admits that his memory is less than perfect and that his recollection of the discussions was influenced by his common practice in similar situations.  (Id. at 23.)  He kept no notes of any conversations with either the AUSA or Nascimento about a possible plea deal.  (Id. at 42.)  The AUSA likewise informed the Court that he had no notes regarding the plea negotiations.  (Id. at 9.)

Schiff's testimony largely confirmed the testimony of Salsberg.  Although Schiff was not personally involved with the plea discussions between Salsberg and Nascimento and between Salsberg and the AUSA, he testified that as a general matter Nascimento "did not want to plead guilty" and "absolutely did not want to cooperate."  (Id. at 45, 47.)  Salsberg informed Schiff about his meeting with the AUSA in which they discussed dropping one 924(c) charge and about his meeting with Nascimento in which

Nascimento rejected pursuing the deal.  (Id. at 45-48.)  Schiff first discussed the plea offer directly with Nascimento during Nascimento's appeal.  (Id. at 47-50.)  He told Nascimento that the sentence he received at the first trial essentially equated to the offered plea bargain, before any downward adjustment for acceptance of responsibility.  (Id. at 50.)  Schiff could not recall Nascimento's reaction to his statement.  (Id.)  Schiff could not recall Nascimento ever saying during the appeal process that he would have pled guilty if given the opportunity.  (Id. at 50-51.)

    Nascimento's testimony largely contradicted the testimony of both Salsberg and Schiff.  Although Nascimento remembered that he talked with Salsberg about a possible plea, he maintained that Salsberg told him that the government's offer required cooperation, meaning that he would have to testify against his fellow defendants, something that he was unwilling to do.  (Id. at 56-58.)  Nascimento claimed he would have pled guilty to an offer which dropped one 924(c) charge, required no cooperation, and provided a three point reduction for acceptance of responsibility.  (Id. at 59.)  Nascimento testified that he first heard of the plea offer that did not require cooperation from Schiff while his case was on appeal.  (Id. at 60-61.)  Nascimento testified that Schiff told him the plea sentence would be in the range of what some of his co-defendants received, Monteiro (72

months), Lopes (27 months), and Rodrigues (probation).  (Id. at 61; Def.'s Mem. in Supp. of Mot. to Vacate 3 n.2.)

On cross examination, the government asked Nascimento if "the guilty plea had required you to come in and admit under oath that you and Manny Monteiro had shot Danny Antunes, would you have done that?"  (Hr'g Tr. 67.)  This question referred to one charge in Count One of Nascimento's indictment, "Racketeering Act Two - Assault with Intent to Murder Danny Antunes," of which he was acquitted.  Nascimento answered, "Absolutely not."  (Id.)

### III. DISCUSSION

A. The Plea Deal

The Sixth Amendment provides defendants with the right to the "effective assistance of counsel."  Strickland v. Washington, 466 U.S. 668, 685-686 (1984).  To prove ineffective assistance, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense.  Id. at 687.

A counsel's performance is deficient if the counsel's representation falls below an objective standard of reasonableness.  Id. at 687-88.  A court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  Id. at 690.  The "reasonableness of counsel's actions may be determined or substantially influenced by the

defendant's own statements or actions. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id. at 692.

However, "counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution." Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999). A "defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective counsel under the Sixth Amendment and satisfies the first element of the Strickland test." Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003). When there is a plea offer, counsel must advise the client as to the merits of pleading guilty. Boria v. Keane, 99 F.3d 492, 496 (2d Cir. 1996).

To satisfy the second element of the Strickland test, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The First Circuit has held that a "reasonable probability" must be "substantial" but "it may be less than fifty percent." Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002).

Based on my assessment of the credibility of the witnesses at the hearing, I find that the government made a preliminary plea offer to drop the second 924(c) charge in exchange for Nascimento's pleading guilty to all the remaining charges without any requirement of cooperation.  I further find that Salsberg conveyed the core terms of the plea offer to Nascimento. Nascimento claims that he rejected the offer because he believed it was contingent on his cooperation with the government.  It is likely his memory is faulty as he has also misremembered the conversation with Schiff as to the likely sentence he would have received if he had accepted the offer.

Even if Salsberg did not fully communicate the terms of the offer such that Nascimento understood that cooperation was not required, or did not fully advise Nascimento that such a plea was desirable (i.e., because of the three level reduction for acceptance of responsibility), Nascimento has not shown that he was prejudiced.  The second element of the Strickland test requires the defendant to show that there is a reasonable probability that he would have accepted the plea offer and thus that the outcome of the proceedings would have been different. The testimony of Salsberg and Schiff indicated that Nascimento specifically rejected the plea deal and, more generally, expressed no interest at any time in exploring a plea deal or pleading guilty.  Mr. Salsberg has been a litigator since 1977

and 90 percent of his practice is criminal defense.  If Nascimento had expressed an interest in any kind of plea deal, there is no doubt Salsberg would have explored the matter further.  Nascimento admits he never indicated his willingness to plead guilty to his counsel.  Weighing all the testimony, the Court finds it unlikely that Nascimento would have accepted the plea offer even if he had understood that it did not require cooperation.

Moreover, any plea deal would have required that Nascimento plead guilty to the "Racketeering Act 2" charge in Count One of the indictment involving the shooting of Antunes.  At the evidentiary hearing, Nascimento testified that he absolutely would not admit to the facts underlying that charge.  Likewise, Nascimento continues to dispute that "there ever was a Stonehurst organization, or that he was ever part of such an organization," facts essential to all the racketeering charges to which Nascimento claims he would have pled guilty.  (Def.'s Mem. in Supp. of Mot. to Vacate 2 n.1.)  The trial was a vigorous pitched battle by all co-defendants on multiple issues at all times.  Given the seriousness of the charged offenses and the length of the sentence involved, the government would not have made an offer – and this Court would not have accepted a plea – in the face of such key denials.  Nascimento has thus failed to show that he was prejudiced.

### B. The Ballistics Report

At trial, Massachusetts State Trooper Doug Weddleton testified that shell casings recovered from one of the Stonehurst shootings matched a gun frame found in Nascimento's bedroom on the basis of a comparison of the breech face markings on the recovered casings and test casings fired from the gun frame. Weddleton's testimony corroborated the testimony of the government's flawed cooperating witness Augusto Lopes, who had testified regarding Nascimento's connection to the Stonehurst gang and his role in the shooting from which the casings were recovered.  Nascimento, 491 F.3d at 49.

Nascimento now moves to amend his motion filed under 28 U.S.C. § 2255 to seek relief on the ground that he has newly discovered evidence which impeaches the reliability of Weddleton's opinion, namely a report from the National Research Council stating that "[t]he validity of the fundamental assumptions of uniqueness and reproducibility of firearms-related toolmarks has not yet been fully demonstrated."  Comm. to Assess the Feasibility, Accuracy, and Technical Capability of a Nat'l Ballistics Database, Nat'l Research Council of the Nat'l Acads., Ballistic Imaging 3 (Daniel L. Cork et al. eds., 2008) [hereinafter Ballistic Imaging].  The government has not filed an opposition to the motion to amend and has not briefed the issue. The Court **ALLOWS** the motion to amend as unopposed and orders the

government to respond in 14 days.

## ORDER

Defendant's motion to vacate his sentence [Docket No. 1480] on the ground of ineffective assistance of counsel is **DENIED**. Defendant's motion for leave to amend his motion filed under 28 U.S.C. § 2255 (Docket No. 1503) is **ALLOWED** as unopposed. The government shall respond in fourteen (14) days to the new ground.

                                 **S/PATTI B. SARIS**
                                 United States District Judge