```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
_____
                              )
UNITED STATES OF AMERICA      )
                              )
     v.                       )   CRIMINAL ACTION NO. 03-10329-PBS
                              )
JACKSON NASCIMENTO,           )
                              )
     Defendant.               )
_____)
```

**MEMORANDUM AND ORDER**

October 9, 2009

Saris, U.S.D.J.

## I. INTRODUCTION

Defendant Jackson Nascimento was convicted of racketeering and firearm charges and sentenced to 171 months imprisonment. Nascimento filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255, arguing that his trial counsel provided ineffective assistance by failing to convey a plea offer and that he has newly discovered evidence which undermines his conviction.[1] After briefing and a hearing, this Court denied Nascimento's motion on the first ground. After additional briefing, the motion to vacate on the second ground is **DENIED**.

## II. BACKGROUND

In September 2004, a federal grand jury issued a superseding indictment against thirteen defendants, including Nascimento, for participating in the Stonehurst Street gang's war with a rival

---

[1] Nascimento has dropped claims 1, 3 and 4 of the motion.

gang called "Wendover."  In March 2005, following a jury trial, Nascimento was convicted of various racketeering charges and one charge of using a firearm in furtherance of a crime under 18 U.S.C. § 924(c).  Specifically, he was found guilty of shooting an innocent person, Zilla DoCanto, in furtherance of the gang's vendetta against Wendover.  He was found not guilty of a second 924(c) charge involving Danny Antunes.

The First Circuit denied his appeal on July 2, 2007, and the Supreme Court later denied his petition for certiorari.  United States v. Nascimento, 491 F.3d 25 (1st Cir. 2007), cert. denied, 128 S. Ct. 1738 (2008).

In June 2008, Nascimento filed a motion to vacate his sentence under 28 U.S.C. § 2255.  On December 12, 2008, he narrowed the motion to two claims: (1) a claim of ineffective assistance of counsel and (2) a claim that a new report on ballistics undermined his conviction.  On May 26, 2009, the Court denied Nascimento's motion on the first ground, and requested additional briefing from the government on the second ground.

### III. DISCUSSION

At trial, Massachusetts State Trooper Doug Weddleton testified that shell casings recovered from one of the Stonehurst shootings matched a gun frame found in Nascimento's bedroom on the basis of a comparison of the breech face markings on the recovered casings and test casings fired from the gun frame. Weddleton's testimony corroborated the testimony of the

government's flawed cooperating witness Augusto Lopes, who had testified regarding Nascimento's connection to the Stonehurst gang and his role in the shooting from which the casings were recovered.  Nascimento, 491 F.3d at 49.

Nascimento now claims that he has newly discovered evidence which impeaches the reliability of Weddleton's opinion, namely a report from the National Research Council stating that "[t]he validity of the fundamental assumptions of uniqueness and reproducibility of firearms-related toolmarks has not yet been fully demonstrated."  Comm. to Assess the Feasibility, Accuracy, and Technical Capability of a Nat'l Ballistics Database, Nat'l Research Council of the Nat'l Acads., Ballistic Imaging 3 (Daniel L. Cork et al. eds., 2008) [hereinafter Ballistic Imaging].

The First Circuit has not decided "whether newly discovered evidence is a cognizable ground for obtaining a new trial in proceedings under § 2255."  Moreno-Morales v. United States, 334 F.3d 140, 149 (1st Cir. 2003).  However, it has declared that "[a]t a minimum, [Defendant] would be required to meet the conventional criteria for obtaining a new trial on the ground of newly discovered evidence."  Barrett v. United States, 965 F.2d 1184, 1194 (1st Cir. 1992).  That is, the Defendant would have to prove: "(1) the newly discovered evidence was unknown or unavailable at the time of trial; (2) the defendant was duly diligent in trying to discover it; (3) the evidence was material; and (4) the evidence was such that it would probably result in an

acquittal upon retrial." Awon v. United States, 308 F.3d 133, 140 (1st Cir. 2002).

The report cannot pass this test. Although the report does note that "[t]he validity of the fundamental assumptions of uniqueness and reproducibility of firearms-related toolmarks has not yet been fully demonstrated," it goes on to note, under the bold heading "Limitations: What the Committee Study Does *Not* Do,"

> First, and most significantly, *this study is neither a verdict on the uniqueness of firearms-related toolmarks generally nor an assessment of the validity of firearms identification as a discipline.* Our charge is to focus on "the uniqueness of ballistic images" — that is, on the uniqueness and reproducibility of the markings (toolmarks) left on cartridge cases and bullets as they are recorded or measured by various technologies (e.g., photography or surface metrology).

Ballistic Imaging, supra, at 18. In a prescient statement, the study goes on to note:

> Although a definitive statement on firearms toolmark uniqueness is not within our purview, some discussion of issues related to uniqueness -- particularly the sources of variability in generating such toolmarks – are essential to our work. . . . From these reviews, some readers may attempt to infer a stance by this committee, for or against the validity of firearms identification generally. . . . We reiterate that no such broader conclusion is intended by this report, which was not developed to support more sweeping statements.

Id. at 18-19. Given the narrow scope of the report, at best it provides additional impeaching material.

Nascimento's lawyers at trial raised precisely the point Nascimento argues now, and Weddleton conceded it. It is worth quoting the transcript at length:

4

>    Q. Okay. Absent a database that shows what types of impressions are made, breach-face impressions are made by, say, a Smith & Wesson, how can you tell us that breach impression made on a Beretta which is somewhere else aren't so sufficiently similar that you couldn't distinguish them?
>
>    A. I would say, in my opinion, it's based on my training and experience, and, uhm, based on my opinion.
>
>    Q. Yes, but that doesn't answer the question, does it?
>
>    . . . .
>
>    Q. Now I'm asking you how it is that you can tell us that another shell casing fired, say, from a Beretta 9-millimeter that you've never seen, never analyzed, have no knowledge of, wouldn't have such similar characteristics that you could not distinguish them because you're just giving an opinion?  How can you tell us that?
>
>    . . . .
>
>    Q. Let's try this another way.  Do you have any data, a database, any data that would enable you to say that the impressions made by [the gun] could or could not have been made by another type of firearm other than the one that fired this?
>
>    A. No, we do not.

(Trial Tr. 66:24 - 70:19, Mar. 3, 2005.)  Particularly in light of the vigorous attack on Weddleton's credentials and this conclusion, the report could have done little, if anything, further.[2]

The Defendant attacks the fact that the test in play under Barrett "demands an *actual* probability that the result would have

---

[2] Sgt. Weddleton was impeached on the ground that he had no certification, he had never been tested, he did not document his work, he was not trained in science, and he did not keep up in his field.

differed, whereas the [Brady v. Maryland] test speaks in terms of something less - a merely theoretical (but still reasonable) probability." United States v. Connolly, 504 F.3d 206, 213 (1st Cir. 2007). Under either standard, though, Nascimento has not demonstrated the requisite probability that the outcome would have been different. This Court admitted ballistics testimony after an extensive Daubert hearing. See generally United States v. Monteiro, 407 F. Supp. 2d 351 (D. Mass. 2006) (holding ballistics testimony admissible with proper limitation). Weddleton's expert testimony was sufficient to corroborate Lopes' testimony in the face of Nascimento's criticism, with or without the report.

Furthermore, although the report was not published until recently, it explicitly notes that its discussion of uniqueness is "an overview of existing research among firearms examiners on the uniqueness and reproducibility of toolmarks." Id. at 81. The discussion is introduced thus: "In recent years, several review articles have summarized the findings of individual studies on the basic principles of firearms and toolmarks - the uniqueness, reproducibility, and permanence of individual characteristics, as seen by trained examiners using comparison microscopy." Id. at 70. Although the report does make the finding on which Nascimento relies, the section of the report cited by Nascimento is merely an overview of previous research on the subject, and almost all of the articles cited were written

prior to Nascimento's trial.  Most dramatically, the report quotes an article published in 1935 discussing the very same challenge to the foundation of toolmark uniqueness:

> The firearms witness may expect to be asked how he can be sure of his findings, in view of the fact that he can have examined only a few of the countless thousands of guns that exist. . . .  [T]he firearms expert, who admittedly cannot have actually examined more than the tiniest fraction of a percent of all the guns in the world, can [respond that he can] still have had enough experience to be well aware of what differences do occur, and to know that the chance of finding two bullets from different guns that are exactly alike in every detail of their surface markings is infinitesimally small.

Id. at 57.  As such, it cannot be said that this evidence was unknown or unavailable at the time of trial or that any failure to cite it was not the result of a lack of due diligence in trying to discover it.

### ORDER

Defendant's motion to vacate his sentence under 28 U.S.C. § 2255 [Docket No. 1480] on the ground of newly discovered evidence is **DENIED**.

**S/PATTI B. SARIS**  
United States District Judge